UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMAL WILLIAMS,

                    Plaintiff,

                                              9:03-CV-0912
v.                                           (LEK/GHL)

W. WEAVER,

                    Defendant.
_____

APPEARANCES:                         OF COUNSEL:

JAMAL WILLIAMS, 00-A-0011
  Plaintiff, *Pro Se*
Eastern Correctional Facility
P.O. Box 338
Naponoch, NY 12458-0338

HON. ELIOT L. SPITZER                    MARIA MORAN, ESQ.
Attorney General of the State of New York     Assistant Attorney General
  Counsel for Defendants
615 Erie Boulevard West
Syracuse, NY 13204-2455

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

       This action has been referred to me for Report and Recommendation by the Honorable

Lawrence E. Kahn, United States District Judge, pursuant to Local Rule 72.3(c) and 28 U.S.C. §

636(b). Jamal Williams ("Plaintiff") commenced this *pro se* civil rights action against W.

Weaver ("Defendant"), pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) Currently before the Court

is Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No.

26.) For the reasons that follow, I recommend that Defendant's motion be conditionally granted.

I.     **BACKGROUND**

    A.     **Allegations of Plaintiff's Complaint**

A liberal reading of Plaintiff's *pro se* Complaint reveals the following allegations.

On June 20, 2003, while Plaintiff was incarcerated at Auburn Correctional Facility, "a weapon . . . was found on the outside upper part of [the] door" to his cell, number D-4-32. (Dkt. No. 1, "Attached Statement.")  For the rest of that day, Plaintiff was confined to his cell. (*Id.*) On June 21, 2003, he was issued a misbehavior report by the officer in charge of D-Block, Randy Russer, charging plaintiff with violating Auburn Correctional Facility Rule 113.10.[1]  (*Id.*)

On June 25, 2003, Plaintiff appeared at a disciplinary hearing, over which Defendant presided. (*Id.*)  Plaintiff pled not guilty. (*Id.*)  After committing several procedural errors (described below), Defendant found Plaintiff guilty and sentenced him to four (4) months in the Special Housing Unit ("SHU") with a corresponding loss of privileges and good-time credit. (*Id.*)  On June 25, 2003, Plaintiff filed an appeal of the disciplinary conviction. (*Id.*)  The appeal was still pending when Plaintiff filed the current federal court action, on July 1, 2003. (*Id.*)

Generally, Plaintiff alleges that two procedural errors occurred with respect to his disciplinary hearing and conviction.  First, he alleges that, during the hearing, Defendant, (1) denied Plaintiff's request to call Officer Russer as a witness to establish his innocence, (2) denied Plaintiff's request for a written statement as to why his request to call Officer Russer was being denied, and (3) "condoned" the action of the Plaintiff's assigned legal assistant who, while Plaintiff was in pre-hearing confinement, had denied Plaintiff (a) "documentary evidence for his

---

[1]     Rule 113.10 provides: "Inmates shall not make, possess, sell or exchange any item of contraband that may be classified as a weapon by description, use or appearance."  7 NYCRR § 270.2 [B][14][i].  It is either a Tier II or Tier III offense. *Id.*

defenses, i.e.[,] log book entries for the date of his placement in D-4-32 and a copy of D-4-32 search cell slip and incident report" and (b) an opportunity to interview Officer Russer.  (*Id.*)  Second, Plaintiff alleges that Defendant reached a determination of guilt despite the fact that the disciplinary charge against Plaintiff lacked substantial evidence, given the location of the weapon found, which was "accessible to over 47 prisoners, including the prisoner who was in D-4-32 cell before [plaintiff]."  (*Id.*)

Finally, Plaintiff alleges that, while he was confined for 23 hours per day in the SHU, he was denied the right to attend Islamic religious services and religious classes.  (*Id.*)

### B.   Relevant Procedural History

On October 30, 2003, Defendant moved to dismiss Plaintiff's Complaint on the ground that Plaintiff failed to exhaust his administrative remedies and that Plaintiff fails to state a claim upon which relief can be granted.  (Dkt. No. 7.)  Generally, that motion was based on two grounds: (1) Plaintiff failed to exhaust his available administrative remedies before filing suit; and (2) in any event, Plaintiff failed to state a claim upon which relief can be granted because he has not specified what constitutional right has allegedly been violated.  (Dkt. No. 8.)  On January 18, 2005, I issued a Report-Recommendation to District Judge Kahn, recommending that Defendant's motion be denied.  (Dkt. No. 15.)  On February 18, 2005, Judge Kahn issued an Order approving and adopting my Report-Recommendation.  (Dkt. No. 17.)  On February 23, 2005, Defendant filed an Answer to Plaintiff's Complaint.  (Dkt. No. 18.)  On January 18, 2006, Defendant filed the current motion for judgment on the pleadings.  (Dkt. No. 26.)  On April 12, 2006, Plaintiff filed a response in opposition to Defendant's motion.  (Dkt. No. 28.)

Generally, Defendant's current motion is based on two grounds.  First, Defendant argues

that Plaintiff's Complaint should be dismissed because the sole claim asserted in that Complaint

is a procedural due process claim under the Fourteenth Amendment, and Plaintiff has not

sufficiently alleged that Defendant violated a due process liberty interest that was in fact

protected by the Fourteenth Amendment because the duration of his confinement in SHU was too

brief.  (Dkt. No. 26, Part 2, at 3-10.)  In particular, Defendant argues that Plaintiff was released

from SHU confinement after only thirteen (13) days.  (*Id*.)  Second, Defendant argues that, even

if Plaintiff had sufficiently alleged the existence of a protected liberty interest, his Complaint

should be dismissed because, as a matter of law, Defendant is protected by qualified immunity

because the boundaries of an inmate's liberty interest, as articulated by *Sandlin v. Conner*, 515

U.S. 472 (1995), were not "clearly established" at the time in question, on June 25, 2003 (nor are

those boundaries clearly established now, argues Defendant).  (*Id*. at 10-11.)

Liberally construed, Plaintiff's response asserts three arguments.[2]  First, Plaintiff argues

that Defendant is incorrect that the *sole* claim asserted in Plaintiff's Complaint is a procedural

due process claim under the Fourteenth Amendment–Plaintiff argues that he *also* asserts a First

Amendment claim with respect to his practicing of the Islamic religion.  (Dkt. No. 28 at 1-2.)

Second, Plaintiff argues that he did possess a due process liberty interest that was protected by

the Fourteenth Amendment because, despite the brevity of his period of confinement, the

conditions of that confinement were unusually harsh (e.g., in that those conditions prevented him

from practicing his religion, etc.).  (*Id*.)  Third, Plaintiff argues that Defendant is not entitled to

---

[2]        I note that Plaintiff's response is deficient in that it is not accompanied by a
memorandum of law, as required by Local Rule 7.1(a) of the Local Rules of Practice for this
Court.  (*See* Dkt. No. 28 at 2 [Plf.'s Response, acknowledging lack of presentation of legal
authority supporting arguments contained therein].)

qualified immunity because, at the time he conducted Plaintiff's disciplinary hearing, Defendant

was acting outside of the scope of his employment (as defined in the DOCS' employee manual).

(*Id*. at 2.)

## II.    STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "After the

pleadings are closed . . . any party may move for judgment on the pleadings."  Fed. R. Civ. P.

12(c).  "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a

motion under Rule 12(b)(6)."[3]

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  To prevail on a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon

which relief can be granted," a defendant must show "beyond doubt that the plaintiff can prove

no set of facts in support of his claim [that] would entitle him to relief,"[4] or the defendant must

show that the plaintiff's claim "fails as a matter of law."[5]  Thus, a defendant may base a Rule

---

[3]        *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816
(1994) (citations omitted); *accord*, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d
123, 126 (2d Cir. 2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for
judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a
claim.").

[4]        *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted); *Chance v.
Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S.
506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be
granted under any set of facts that could be proved consistent with the allegations.") (internal
quotations and citation omitted).

[5]        *Phelps v. Kapnolis*, 308 F.3d 180, 187 (2d Cir. 2002) (citing *Estelle v. Gamble*,
429 U.S. 97, 108, n.16 [1976].)

12(b)(6) motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[6] or (2) a challenge to the legal cognizability of the claim.[7]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a)(2)

---

[6]     *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[7]     *See Swierkiewicz* 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . .  In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 2005 U.S. Dist. LEXIS 6686 (S.D.N.Y. Apr. 20, 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") (citation omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

does not require a pleading to state the elements of a prima facie case,[8] it does require the

pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests."[9]  The purpose of this rule is to "facilitate a proper decision on the merits."[10]  A

complaint that fails to comply with this rule "presents far too a heavy burden in terms of

defendants' duty to shape a comprehensive defense and provides no meaningful basis for the

Court to assess the sufficiency of [plaintiff's] claims."[11]

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as

"simplified" and "liberal," and has rejected judicially established pleading requirements that

exceed this liberal requirement.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002)

(noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited

exceptions [including] averments of fraud or mistake.").  However, even this liberal notice

---

[8]      *See Swierkiewicz* 534 U.S. at 511-512, 515.

[9]      *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[10]      *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Conley*, 355 U.S. at 48).

[11]      *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

pleading standard "has its limits."[12]

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[13]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[14]  Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[15]

Moreover, when addressing a *pro se* complaint, generally a district court "should not

---

[12]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see*, *e.g.*, *Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See*, *e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[13]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[14]     *Hernandez*, 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citations omitted); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (citation omitted).

[15]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[16]  However, "all normal rules of pleading are not absolutely suspended."[17]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[18]

Finally, as with a Rule 12(b)(6) motion, Rule 12(c) motions are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings.[19]

## III.   ANALYSIS

Taken together, Defendant's motion papers, and Plaintiff's response, raise the following three issues: (1) whether Plaintiff has stated a claim under the First Amendment with respect to his practicing of the Islamic religion; (2) whether Plaintiff has sufficiently alleged the existence

---

[16]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").  Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.

[17]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980) (citations omitted), *accord, Gil v. Vogilano*, 131 F. Supp.2d 486, 491 (S.D.N.Y. 2001).

[18]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

[19]     *See* Fed. R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

of a due process liberty interest protected by the Fourteenth Amendment; (3) whether Defendant

is protected by qualified immunity as a matter of law.

> **A.      Whether Plaintiff Has Stated a Claim Under the First Amendment with Respect to His Practicing of the Islamic Religion**

Generally, First Amendment claims by inmates regarding the practice of their religion

may be broken down into two types of claims–a claim that a defendant's conduct infringed on the

inmate's religious beliefs (called a "free exercise claim"), and/or a claim that a defendant

retaliated against a plaintiff for practicing his religion (called a "retaliation claim").

> **1.      Free-Exercise Claim**

"Prisoners retain their right to religious freedom [under the First Amendment] even when

incarcerated . . . [and are] therefore entitled to a reasonable accommodation of [their] religious

beliefs."[20]  Generally, "[t]o assess a free exercise claim, a court must determine (1) whether the

practice asserted is religious in the [prisoner's] scheme of beliefs, and whether the belief is

sincerely held; (2) whether the challenged conduct of prison officials infringes upon the religious

belief; and (3) whether the challenged conduct of the prison officials furthers some legitimate

penological objective."[21]  The reason for the third consideration is the fact that the right of a

prisoner to exercise his religion is balanced against "the interest of prison officials charged with

---

[20]      *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

[21]      *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988); *see also, Ford v. McGinnis*, 352 F.3d 582, 588-596 (2d Cir. 2003) (not deciding question of whether "substantial burden" requirement is contained among elements of First Amendment free-exercise claim); *accord, McEachin v. McGinnis*, 357 F.3d 197, 203 (2d Cir. 2004); *Shakur v. Selsky*, 319 F.3d 106, 120 (2d Cir. 2004).

the complex duties arising from administration of the penal system."[22]

Here, the challenged conduct consisted of (1) confining Plaintiff to SHU for 23 hours per day between June 25, 2003 (when Plaintiff started serving the disciplinary sentence imposed on him by Defendant), and July 9, 2003 (when Plaintiff was released from the Auburn C.F. SHU and transferred to Cayuga C.F.),[23] which allegedly prevented Plaintiff from being able to "attend

---

[22]      *Ford*, 352 F.3d at 588; *Burgess v. Friedmann*, 05-CV-0379, 2005 U.S. Dist. LEXIS 38423, at *7-8 (N.D.N.Y. Dec. 22, 2005) (Mordue, J.); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987); *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995); *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995); *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989); *Farid*, 850 F.2d at 925.

[23]      (*See* Dkt. No. 12, ¶ 4 [Plf.'s Response to Def.'s Motion to Dismiss, alleging that Plf. was transferred from Auburn C.F. to Cayuga C.F. on July 9, 2003].)  As I pointed out in my previous Report-Recommendation, it is permissible for a court to consider materials outside a plaintiff's complaint when reviewing a motion to dismiss for failure to state a claim, to the extent those papers are consistent with the allegations of the plaintiff's complaint.  (Dkt. No. 15 at 4, n.6 [Report-Recommendation filed 1/18/05].)  As a result, I consider Plaintiff's opposition papers in reaching the aforementioned liberal interpretation of Plaintiff's Complaint.  I note, however, that Plaintiff also appears to suggest, in his opposition papers, that--after the Superintendent reversed Defendant's disciplinary conviction of Plaintiff on July 8, 2003, and after Plaintiff was transferred from Auburn C.F. to Cayuga C.F. on July 9, 2003--Plaintiff continued to be confined under conditions that prevented him from being able to practice his religion until July 23, 2003.  (*See* Dkt. No. 12, ¶ 4 [Plf.'s Response to Def.'s Motion to Dismiss]; Dkt. No. 28 at 1 [Plf.'s Response to Def.'s Motion for Judgment on Pleadings, alleging that, after the Superintendent reversed Plf.'s disciplinary conviction, Plf. spent "a continuous [period] of time" in SHU before being released].)  Because these assertions are factually bare and inconsistent with the allegations of Plaintiff's Complaint, I do not even liberally construe them as alleging that Defendant, by issuing a disciplinary sentence that was admittedly reversed on appeal, somehow *caused* Plaintiff to be deprived of a First Amendment right to practice his religion at Cayuga C.F. from July 9, 2003, to July 23, 2003.  Among other deficiencies, such an assertion fails to even suggest that Defendant was *personally involved* in any such deprivation at Cayuga C.F.  Even if I were to construe Plaintiff's Complaint as alleging that Defendant caused Plaintiff to be confined in SHU between June 25, 2003, and July *23*, 2003 (as opposed to July *9*, 2003), I would reach the same conclusions as I reach later in this Report-Recommendation regarding his failure to state a First Amendment claim.

Muslim religious services and Muslim religious classes,"[24] and (2) subjecting Plaintiff to harsh conditions in SHU (consisting of "90 degree [heat]" and "Plex's glass [sic] [walls]"), which allegedly prevented him from being able to practice Islam.[25]

I find that, as alleged, this conduct did not *infringe* on Plaintiff's religious beliefs, as a matter of law.  Most notably, Plaintiff does not assert any factual allegations indicating what "Muslim religious services and Muslim religious classes" he was not able to attend during the time period in question.[26]  Because Plaintiff alleges that the conduct in question occurred between June 25, 2003, and July 23, 2003, I cannot imagine any circumstances, consistent with the factual allegations of Plaintiff's Complaint, in which Defendant could have prevented Plaintiff from attending either of (what the Second Circuit has characterized as) the two "major religious observances" in Islam in 2003–the "Eid ul Fitr" feast (which occurred in November of 2003), or the "Eid ul Adha" feast (which occurred in February of 2003).[27]  Nor can I imagine how Defendant could have prevented Plaintiff from attending any other Islamic "observance" in

---

[24]    (Dkt. No. 1, "Attached Statement" at 2.)

[25]    (Dkt. No. 28 at 1 [Plf.'s Response to Def.'s Motion for Judgment on Pleadings].)

[26]    (*See generally* Dkt. Nos. 1 [Plf.'s Compl.], 23 [Plf.'s Response to Def.'s Motion to Dismiss], 28 [Plf.'s Response to Def.'s Motion for Judgment on Pleadings].)

[27]    *See Ford v. McGinnis*, 352 F.2d 582, 584-585 & n.4 (2d Cir. 2003) (recognizing Islam's "two major religious observances" as the "Eid ul Fitr feast," which occurs after the conclusion of the holy month of Ramadan, and the "Eid ul Adha" feast).  I take judicial notice of the dates of these two Islamic holidays in 2003.  *See, e.g.*, *Commadari v. Long Island Univ.*, 89 F. Supp.2d 353, 379 (E.D.N.Y. 2000) (taking judicial notice of the date of the Thanksgiving holiday in 1998); *Platts v. U.S.*, 658 F. Supp. 850, 854, n.5 (D. Maine 1987) (taking judicial notice of the date of the Labor Day holiday in 1984); *Allen v. Allen*, 518 F. Supp. 1234, 1235, n.2 (E.D. Pa. 1981) (taking judicial notice of the date of Father's Day in 1979); *Lloyd v. Cessna Aircraft Co.*, 430 F. Supp. 25, 26 (D. Tenn. 1976) (taking judicial notice of the date of the Memorial Day holiday in 1976).

2003.[28]  Rather, the only thing I can imagine Plaintiff having missed between June 25, 2003 (a

Wednesday), and July 9, 2003 (also a Wednesday) are two weekly religious services.  Courts

within this Circuit have repeatedly held that, as a matter of law, similar deprivations do not

substantially burden an inmate's right to practice his religion.[29]

Moreover, I can imagine no circumstances, consistent with the factual allegations of

Plaintiff's Complaint, in which being denied "religious classes" or being subjected to 90-degree

heat behind Plexiglass walls could have inhibited Plaintiff from practicing the Islamic religion.

For example, Plaintiff's Complaint is conspicuously absent of details indicating that the heat in

his cell actually prevented him from doing things such as praying five times a day or reading the

Koran.  I have difficulty imagining circumstances in which these events occurred, and Plaintiff

simply chose to omit mentioning them in his Complaint.  Indeed, Plaintiff has not had just one

---

[28]     I take judicial notice of the fact that, in 2003, no Islamic holidays occurred between June 25, 2003, and July 23, 2003 (or, in other words, that all Islamic holidays in 2003 occurred on dates other than the dates of June 25, 2003, to July 23, 2003).  *See*, *supra*, note 27 of this Report-Recommendation.

[29]     *See, e.g.*, *Persad v. Savage*, 02-CV-0336, 2004 WL 1570286, at *7 (W.D.N.Y. May 25, 2004) (report-recommendation by magistrate judge, observing that there was "no clear statement of law" from the Supreme Court or the Second Circuit that an inmate's right to practice the Islamic religion would be substantially burdened by his inability to attend two weekly religious services), *adopted*, 2004 WL 1858140 (W.D.N.Y. Aug. 19, 2004); *Cancel v. Mazzuca*, 205 F. Supp.2d 128, 142 (S.D.N.Y. March 22, 2002) (granting defendant's motion to dismiss in part because inmate's right to practice Islamic religion was not substantially burdened by his inability to attend one weekly religious service); *Gill v. DeFrank*, 98-CV-7851, 2000 WL 897152, at *1-2 (S.D.N.Y. July 6, 2000) (inmate's right to practice Jehovah's Witness religion was not substantially burdened by his inability to attend one weekly religious service), *aff'd*, 8 Fed. Appx. 35 (2d Cir. 2001) (unpublished decision); *Troy v. Kuhlmann*, 96-CV-7190, 1999 WL 825622, at *14-15 (S.D.N.Y. Oct. 15, 1999) (inmate's right to practice Islamic religion was not substantially burdened by his inability to attend one weekly religious service); *Boomer v. Irvin*, 963 F. Supp. 227, 230-231 (W.D.N.Y. 1997) (inmate's right to practice Islamic religion was not substantially burdened by his inability to attend one weekly religious service).

opportunity to provide such details to the Court, but *three* opportunities to do so--the latter two

opportunities consisting of his opportunities to respond to Defendant's two motions to dismiss

(which responses I have construed as essentially amending Plaintiff's bare-bones and rather

prematurely filed Complaint).

My frustration with Plaintiff's Complaint is tempered somewhat by my continued

consideration of the fact that he is a civil rights plaintiff who is proceeding *pro se.* For this

reason, and the fact that a very liberal reading of the Complaint gives the slightest of indications

that Plaintiff *might* be able to state a First Amendment claim if given a final opportunity to do so,

I believe that he should be granted leave to amend his Complaint before his attempted free-

exercise claim is dismissed.[30]

As a result, I recommend that Plaintiff's free-exercise claim should be *conditionally*

dismissed (as described at the end of this Report-Recommendation) for failure to state a claim.

One final point bears mentioning before I move on to my analysis of any retaliation claim

asserted in Plaintiff's Complaint.  Plaintiff's attempted free-exercise claim emerged from

obscurity only through his response to Defendant's motion for judgment as a matter of law.

Because Defendant did not file a reply to Plaintiff's response, Defendant has not briefed the

Court on whether any *legitimate penological objective* was furthered by the (alleged) deprivation

to Plaintiff of attending religious services and/or classes.[31]  As a result, I am unable to reach the

issue of whether the challenged conduct did, as a matter of law, further a legitimate penological

---

[30]      *See, supra*, Part II & n. 16 of this Report-Recommendation.

[31]      Had Defendants in fact briefed the issue, I would have been interested to see
whether their argument would have required the support of evidence that would have
transformed their motion to dismiss into a motion for summary judgment.

14

objective, except to make the following observation.  Auburn C.F. is a maximum security prison,

and Plaintiff was confined in its SHU due to a disciplinary conviction arising from the discovery

of a weapon in his possession.  Permitting Plaintiff to attend "congregate" or communal religious

services during his stay in SHU would, by definition, involve permitting Plaintiff to co-mingle

with other inmates.  I can easily imagine that such a co-mingling would pose an increased

security risk, making any prohibition of his attending the service a "legitimate penological

objective."[32]

### 2.    Retaliation Claim

Claims of retaliation find their roots in the First Amendment.[33]  Central to such claims is

the notion that in a prison setting, corrections officials may not take actions which would have a

chilling effect upon an inmate's exercise of First Amendment rights.[34]  Because of the relative

ease with which claims of retaliation can be incanted, however, courts have scrutinized such

retaliation claims with particular care.[35]  As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are
> difficult to dispose of on the pleadings because they involve questions
> of intent and are therefore easily fabricated.  Second, prisoners' claims
> of retaliation pose a substantial risk of unwarranted judicial intrusion
> into matters of general prison administration.  This is so because
> virtually any adverse action taken against a prisoner by a prison

---

[32]    *See Matiyn v. Henderson*, 841 F.2d 31, 33, 37 (2d Cir. 1988) (inmate, who was prevented from attending communal Islamic services due to his incarceration in Auburn C.F. SHU following discovery of weapon in his possession, was so prevented for reasons related to "legitimate penological objectives") [citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987)].

[33]    *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).

[34]    *See Gill*, 389 F.3d at 381-383.

[35]    *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.[36]

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a Plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech or conduct and the adverse action--in other words, that the protected speech or conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.[37]   Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.[38]

Here, Plaintiff has asserted no factual allegations indicating that he was retaliated against for practicing his religion.[39]  Indeed, Plaintiff does not even allege that Defendant knew Plaintiff was a follower of Islam when he issued his disciplinary hearing determination and sentence.[40]

As a result, I do not even liberally construe Plaintiff's Complaint as asserting a First

---

[36]     *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

[37]     *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]).

[38]     *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

[39]     (*See generally* Dkt. Nos. 1 [Plf.'s Compl.], 23 [Plf.'s Response to Def.'s Motion to Dismiss], 28 [Plf.'s Response to Def.'s Motion for Judgment on Pleadings].)

[40]     (*Id.*)

Amendment retaliation claim.

**B.     Whether Plaintiff Has Sufficiently Alleged the Existence of a Due Process Liberty Interest Protected by the Fourteenth Amendment**

In my Report-Recommendation addressing Defendant's motion to dismiss (which Report-Recommendation was approved and adopted by the Court), I stated, *inter alia*, that Plaintiff "has sufficiently stated a [Fourteenth Amendment] claim under Section 1983."[41]  That statement requires some qualification.

Specifically, that statement was made in response to Defendant's argument that Plaintiff had failed to state a Fourteenth Amendment claim because he had not alleged that his disciplinary conviction had been reversed, expunged, or invalidated by another tribunal.[42] Because Plaintiff alleged (in his response to Defendant's motion to dismiss) that his disciplinary conviction had been reversed, I rejected Defendant's argument and concluded that Plaintiff had sufficiently stated a claim.[43]  In so doing, I should have clarified that Plaintiff had sufficiently stated a Fourteenth Amendment claim under Section 1983 only *insofar as he has alleged that his disciplinary conviction had been reversed.*  I did not mean to *sua sponte* address the issue (which had not been raised or briefed by the parties) of whether Plaintiff had failed to state a Fourteenth Amendment claim by failing to allege the existence of a liberty interest protected by the Fourteenth Amendment.  That latter issue has been raised and briefed by the parties in the current motion.  As a result, I shall address it now, without regard to my finding in my prior Report-

_____

[41]      (Dkt. No. 15 at 9.)

[42]      (Dkt. No. 15 at 7, 9; Dkt. No. 8 at 3-4.)

[43]      (Dkt. No. 15 at 9.)

Recommendation that Plaintiff has sufficiently stated a claim insofar as he has alleged that his disciplinary conviction had been reversed.

Defendant argues that Plaintiff has not sufficiently alleged that Defendant violated a due process liberty interest that was in fact protected by the Fourteenth Amendment because Plaintiff has not alleged facts indicating that he possessed a protected liberty interest in not being confined to SHU for thirteen (13) days under the conditions he describes.[44]  Specifically, Defendant argues that (1) New York State did not create a liberty interest in remaining free from such confinement, under the standards articulated in *Meachum v. Fano*, 427 U.S. 215 (1976) and *Wolff v. McDonnell*, 418 U.S. 539 (1974), and (2) in any event, such confinement did not impose on Plaintiff an "atypical and significant hardship in relation to the ordinary incidents of prison life," under *Sandlin v. Conner*, 515 U.S. 472, 484 (1995).[45]

Liberally construed, Plaintiff's response papers argue that Plaintiff possessed a due process liberty interest that was protected by the Fourteenth Amendment because the conditions of his confinement did impose on him an atypical and significant hardship in relation to the ordinary incidents of prison life.[46]  Specifically, Plaintiff argues that the atypical and significant hardship resulted from the fact that his confinement was unusually harsh in that (1) he was subjected to 90-degree heat behind Plexiglass walls, and (2) he was denied the opportunity to attend religious services and religious classes.[47]

---

[44]     (Dkt. No. 26, Part 2, at 3-10.)

[45]     (Dkt. No. 26, Part 2, at 3-10.)

[46]     (Dkt. No. 28 at 1-2.)

[47]     (*Id*.; *see also* Dkt. No. 1, "Attached Statement" at 2.)

18

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  Because I construe Defendant's argument as addressing only the first step (i.e., whether there exists a liberty or property interest which has been interfered with by the State), I will address only that first step.

With regard to that first step, "in *Sandlin v. Conner*, 515 U.S. 472 . . . (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ciaprazi v. Goord*, 02-CV-0915, 2005 WL 3531464, at *11 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J., adopting Report-Recommendation of Peebles, M.J.) [citations omitted].

Here, as the defendants did in *Ciaprazi*, Defendant argues that New York State has not, by statute or otherwise, created a protected liberty interest in prisoners remaining free from segregation, including for disciplinary reasons.[48]  *See Ciaprazi*, 2005 WL 3531464, at *11.  However, here, as the defendant did in *Ciaprazi*, Defendant supports that argument with citations to federal court cases that are inapposite.[49]  *See Ciaprazi*, 2005 WL 3531464, at *11

---

[48]     (Dkt. No. 26, Part 2, at 5-7.)

[49]     (Dkt. No. 26, Part 2 at 5 [citing *Hall v. Unknown Agents*, 825 F.2d 642 (2d Cir. 1987), *Klos v. Haskell*, 48 F.3d 81 (2d Cir. 1995), and *Frazier v. Coughlin*, 81 F.3d 313 (2d Cir. 1996)].)

(distinguishing several of the same cases as those cited by Defendant in this action).

After carefully reviewing the law on this issue, I agree with Magistrate Judge David E. Peebles who concluded, in *Ciaprazi*, that "it is now firmly established that through its regulatory scheme, New York State has created a liberty interest in prisoners remaining free from disciplinary confinement, thus satisfying the first *Sandlin* factor." *See Ciaprazi*, 2005 WL 3531464, at *11 [citations omitted]. In addition to the four cases cited by Magistrate Judge Peebles in support of that conclusion (one of which was issued by District Judge Lawrence E. Kahn, *see id.*), I respectfully draw defense counsel's attention to a half dozen other cases supporting that conclusion.[50]

Thus, the only issue remaining before the Court, with respect to Defendant's due process argument, is whether the SHU confinement of Plaintiff, as alleged, imposed an "atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." *Sandlin*, 515 U.S. at 483-484. On this issue I agree with Defendant that, as alleged, the confinement did not constitute such a hardship on Plaintiff, as a matter of law. I reach this conclusion for the same reasons as those asserted by Defendant in his motion papers.[51]

I would add only one point. As described above, the conditions of Plaintiff's

---

[50]     *See Tellier v. Fields*, 280 F.3d 69, 79-83 (2d Cir. 2000) (state regulation concerning administrative detention orders creates a liberty interest that is protected by procedural due process); *accord, Smart v. Goord*, 04-CV-8850, 2006 WL 2089889, at *7 (S.D.N.Y. July 27, 2006); *Homes v. Grant*, 03-CV-3426, 2006 WL 851753, at *18-20 (S.D.N.Y. March 31, 2006); *Freeman v. Goord*, 02-CV-9033, 2005 WL 3333465, at *8 (S.D.N.Y. Dec. 7, 2005); *Torres v. Selsky*, 02-CV-0527, 2005 WL 948816, at *5 (N.D.N.Y. Apr. 25, 2005) (Peebles, M.J.), *adopted*, Decision and Order, 02-CV-0527 (N.D.N.Y. Nov. 8, 2005) (Hurd, J.), *Gulley v. Roach*, 02-CV-0908, 2004 WL 2331922, at *5 (W.D.N.Y. Oct. 15, 2004).

[51]     (Dkt. No. 26, Part 2, at 3-10.)

confinement in the Auburn C.F. SHU, as alleged, consisted of his being confined to SHU for 23 hours per day between June 25, 2003, and July 9, 2003, under conditions in which he was prevented from being able to "attend Muslim religious services and Muslim religious classes," and in which he was subjected to harsh conditions (consisting of "90 degree [heat]" and "Plex's glass [sic] [walls]"), which allegedly prevented him from being able to practice Islam.[52]  I calculate this duration of SHU confinement at Auburn C.F. as consisting of fourteen (14) days, not thirteen (13) days as asserted by Defendant.[53]  Moreover, as I stated above, I do not even liberally construe Plaintiff's Complaint (and his papers in response to Defendant's two dispositive motions) as alleging that Defendant somehow *caused* Plaintiff to be confined to the Cayuga C.F. SHU from July 9, 2003, to July 23, 2003.[54]  (Such a construction would enlarge the duration of Plaintiff's allegedly unconstitutional confinement to a period of twenty-eight days.) In any event, regardless of whether I construe the period of Plaintiff's allegedly unconstitutional confinement as thirteen (13) days, fourteen (14) days, or twenty-eight (28) days, I would reach the same conclusion with regard to that confinement–i.e., that the confinement, as alleged, did not impose an "atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life," as a matter of law.

In reaching this conclusion, in addition to relying on the four factually analogous cases

---

[52]     *See*, *supra*, Part III.A.1. of this Report-Recommendation.

[53]     (Dkt. No. 26, Part 2, at 7, 9.)

[54]     *See*, *supra*, Part III.A.1. & note 23 of this Report-Recommendation.

cited by Defendant,[55] I rely on two seminal cases.  In those two cases, the Supreme Court and

Second Circuit made clear that a "short" period of disciplinary confinement (i.e., under 101 days)

under generally "normal" conditions (i.e., even if some of those conditions are harsher than those

in disciplinary confinement or the general population) usually does not rise to the level of an

"atypical and significant hardship."  *See Sandlin v. Conner*, 515 U.S. 472, 475-476, 486 (1995)

(30 days of disciplinary confinement in SHU under conditions that mirrored those of normal

administrative segregation "with insignificant exceptions" did not rise to the level of atypicality);

*Sealey v. Giltner*, 197 F.3d 578, 589-590 (2d Cir. 1999) (101 days of disciplinary confinement in

SHU under conditions that were "doubtless unpleasant and somewhat more severe than those of

general population" did not rise to the level of atypicality).

As a result, I recommend that Plaintiff's due process claim should be *conditionally*

dismissed (as described at the end of this Report-Recommendation) for failure to state a claim.

### C.      Whether Defendant Is Protected by Qualified Immunity

Because I have concluded that adequate grounds exist for an order conditionally

dismissing Plaintiff's Complaint, I need not, and do not, reach Defendant's alternative argument

that Plaintiff's Complaint should be dismissed because Defendant is protected by qualified

immunity.  I would only add the following two observations (should the Court find it necessary

to reach this alternative argument in deciding Defendant's motion).

First, Defendant correctly recites the law of qualified immunity.  (Dkt. No. 26, Part 2 at

---

[55]      (Dkt. No. 26, Part 2, at 9-10 [citing *Colon v. Howard*, 215 F.3d 227, 231-232 (2d Cir. 2000), *Arce v. Walker*, 139 F.3d 329, 336-337 (2d Cir. 1998), *Durran v. Selsky*, 251 F. Supp.2d 1208, 1213-1215 (W.D.N.Y. 2003), *Alvarado v. Kerrington*, 152 F. Supp.2d 350, 354-355 (S.D.N.Y. 2001)].)

10.)  However, it should be remembered that, "usually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted."  *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (citation omitted).  Rather, the qualified immunity defense may "be asserted on a Rule 12(b)(6) motion [only] as long as the defense is based on facts appearing on the face of the complaint."  *McKenna*, 386 F.2d at 435.  Accordingly,

> a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route.  Not only must the facts supporting the defense appear on the face of the complaint . . . but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.' . . .  Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.

*Id*.

Second, although Defendant would have a rather heavy burden in succeeding on a motion to dismiss based on the ground of qualified immunity, he has made a credible argument in support of such a dismissal.  In addition to the Fourteenth Amendment cases cited by Defendant, I have come across a recent First Amendment case that would weigh in Defendant's favor.  *See Persad v. Savage*, 02-CV-0336, 2004 WL 1570286, at *7 (W.D.N.Y. May 25, 2004) (report-recommendation by magistrate judge, observing that there was "no clear statement of law" from the Supreme Court or the Second Circuit that an inmate's First Amendment right to practice the Islamic religion would be substantially burdened by his inability to attend two weekly religious services), *adopted*, 2004 WL 1858140 (W.D.N.Y. Aug. 19, 2004).

23

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No.

26) be **CONDITIONALLY GRANTED** in that Plaintiff's Complaint should be **DISMISSED**

**UNLESS**, within **THIRTY (30) DAYS** of the issuance of the Court's Order on Defendant's

motion, Plaintiff files an **AMENDED COMPLAINT** that complies with Rules 8 and 12 of the

Federal Rules of Civil Procedure.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: September 5, 2006
        Syracuse, New York

George H. Lowe
United States Magistrate Judge